FILED
2011 Nov-14 AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY LANESE BOWLIN COSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-G-3555-E |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Nancy Lanese Bowlin Cosby, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true.  <u>McGregor</u>, 786 F.2d at 1053; <u>Elam</u>, 921 F.2d at 1216.  The

Commissioner's reasons for refusing to credit a claimant's treating physician must be

supported by substantial evidence.  <u>See</u> <u>McGregor</u>, 786 F.2d at 1054; <u>cf.</u> <u>Hale v. Bowen</u>,

831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a

claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES
## SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant

seeks to establish disability through his or her own testimony of pain or other subjective

symptoms."  <u>Foote</u>, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition
> and either (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (3) that the objectively
> determined medical condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

<u>Foote</u>, at 1560 (quoting <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this

circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the <u>Hand</u> standard require objective
> medical evidence of a condition that could reasonably be expected to cause
> the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus
> under both the regulations and the first (objectively identifiable condition)
> and third (reasonably expected to cause pain alleged) parts of the <u>Hand</u>
> standard <u>a claimant who can show that his condition could reasonably be</u>
> <u>expected to give rise to the pain he alleges has established a claim of</u>
> <u>disability and is not required to produce additional, objective proof of the</u>
> <u>pain itself</u>.  <u>See</u> 20 CFR §§ 404.1529 and 416.929;  <u>Hale</u> at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical

information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a]

claimant's subjective testimony supported by medical evidence that satisfies the pain

standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, he must

be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must

articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons
> for refusing to credit a claimant's subjective pain testimony, then the
> Secretary, as a matter of law, has accepted that testimony as true.  Implicit
> in this rule is the requirement that such articulation of reasons by the
> Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails

to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons

are not supported by substantial evidence, the pain testimony of the plaintiff must be

accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's

hearing before an ALJ, and in many cases such testimony is required.  The VE is typically

asked whether the claimant can perform his past relevant work or other jobs that exist in

significant numbers withing the national economy based upon hypothetical questions

about the claimant's abilities in spite of his impairments.  "In order for a vocational

expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.

The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 48 years old at the time of ALJ Michael L. Levinson's decision. She has past relevant work as a secretary and last worked in September 2006 when she stopped working after the business was sold. [R. 343]. At the hearing, she amended her alleged onset date to July 25, 2007, the date her unemployment benefits stopped. The ALJ found the following severe impairments: chronic low back pain; and degenerative disk disease of the cervical spine at C5-C6. [R. 12]. He found that the plaintiff has the residual functional capacity to perform a reduced range of medium work, and found that she is capable of performing her past relevant work as a secretary. [R. 13-14].

The medical evidence shows that on May 12, 2006, the plaintiff underwent an MRI of her cervical spine which showed a tiny central disc protrusion at C3/C4, C4-C5, and C5-C6. [R. 125]. There was a herniated nucleus pulposus at C6-C7, with posterior projecting osteophytes and resultant spinal stenosis at this level. Id. An MRI of

the thoracic spine was normal. [R. 124].  An MRI of the lumbar spine "mild to moderate facet osteo arthritis" with no other significant abnormality.  [R. 123].

A September 11, 2006, MRI of the cervical spine confirmed a bilobed disc herniation with both left paracentral and right lateral recess components at C6-7, with right worse than left neural foraminal stenosis due to uncovertebral athropathy. [R. 133]. At C5-6 there was a small central disc protrusion.  Id. On September 21, 2006, William C. Woodall, III, M.D., performed an anterior cervical discectomy and fusion with plating at C6-C7. [R. 140-41].  On October 31, 2006, Dr. Woodall noted that she was doing well, with some soreness and stiffness in the neck for which he recommended physical therapy. [R. 128].  On November 27, 2006, Dr. Woodall noted she was essentially the same, and had not had any therapy, "as she says she has been too busy and has to keep her grandchild." [R. 127].  Dr. Woodall said, "I think this is something that will improve with therapy and we will try again to get her involved with that."  Id.

The next day, the plaintiff went to Maddox Pain Management (Hugh G. Maddox, M.D.) and received an epidural injection for low back pain. [R. 222].  As for her neck, Dr. Maddox noted that Dr. Woodall "told her it would take her probably a year to get over [the surgery], but she is doing much better."  Id. On January 15, 2007, the plaintiff returned to Dr. Maddox complaining of pain in her lower back, buttocks, and legs. [R. 220].  After the previous epidural injection, she said she was 95 percent better for a few days, but was now rating her pain as an eight.  Id. Dr. Maddox gave her another epidural, and in recovery, "her pain was greatly improved."  Id. Injections on February

8

22, 2007, March 22, 2007, April 10, 2007, May 24, 2007, and July 9, 2007, gave her

relief. [R. 214-218].  On August 8, 2007, she told Dr. Maddox her pain at its worst was

eight and its best a seven, but got 80 percent relief with treatment. [R. 212].

On May 17, 2007, the plaintiff underwent another cervical MRI, which

showed a mild central disc osteophyte complex at C5-6, post-operative changes at C6-7

with a broad-based protruding disc with osteoarthritic change of the uncovertebral joints

bilaterally, and bilateral foraminal narrowing with mild nerve root impingement. [R. 149].

At the request of the plaintiff's attorney, the plaintiff's treating doctor,

Stephen R. Bowen, M.D., completed at Physical Capactities Evaluation on July 7, 2009.

Dr. Bowen thought the plaintiff could lift 10 pounds occasionally and five pounds

frequently, could sit for four hours and stand or walk for two hours in an eight hour

workday. [R. 314].  He estimated the plaintiff would miss four days a month, and the

basis of his restrictions was the plaintiff's cervical laminectomy.  Id.  Dr. Bowen also

completed a Clinical Assessment of Pain form in which he stated pain is present to such

an extent as to be distracting to adequate performance of daily activities or work, physical

activity would result in greatly increased pain, and drug side effects could be expected to

be severe and to limit effectiveness because of distraction, inattention and drowsiness.

[R. 315].

On July 25, 2007, the plaintiff underwent a consultative physical

examination by Anthony J. Fava, M.D., at the request of the commissioner.  Dr. Fava

found her range of motion in her neck was decreased, although there were no spasms. [R.

155].  Range of motion in her lumbar spine was also decreased.  Id.  However, she got on and off the exam table without difficulty, and ambulated normally without the use of an assistive device with no evidence of ataxia or spacticity. [sic]  Id.  She was unable to squat and arise and was unable to heel walk although she could toe walk.  Id.  Major muscle groups measured 3/5 in the left upper and lower extremities, and 4/5 in the right upper extremities, 5/5 in the right lower extremity.  Id.  Dr. Fava performed a seated straight leg raising test[1], which was positive on the right and left at 45 degrees. [R. 156].  Dr. Fava's diagnosis was herniated nucleus pulposus at C5-C6, C6-C7, by history, status post anterior cervical discectomy at C6-C7, herniated nucleus pulposus of the lumbar spine, by history, chronic depression and migraine headache.  Id.  He commented:

> The claimant is able to perform the following work related activities: sitting, standing and walking for less than 5 minutes, lifting, carrying, and handling objects weighting [sic] less than 1 lb., hearing and speaking.  She is unable to travel.

Id.

There are two psychological evaluations in the record.  The first, by Robert J. Kline, Ph.D., was done July 24, 2007.  Dr. Kline's diagnosis:

> Axis I – Adjustment Disorder with some mild depression.  I will leave the diagnosis of her physical condition to a physician.  I would place her GAF at 61.  The prognosis from a mental health perspective is good.  Effort and

---

[1]  A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine.  (See Listing 1.00(B), ¶5)  The SLR test is also known as Lasègue's sign:  "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed.  This distinguishes the disorder from disease of the hip joint."  Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

motivation were good.  The medical evidence in the records provided by the
DDS as reviewed and those findings were considered in the overall
assessment of the patient.  She can manage financial benefits.  She has a
marked restriction of activities, a mild constriction of interests, and no
restriction in her ability to relate to others.  She has the ability to function
independently.  Her ability to understand, to carry out and remember
instructions, and to respond appropriately to supervision, co-workers, and
work pressures in a work setting would be within reasonable limits if she
were physically capable of performing the duties.

[R. 152].

The plaintiff was also examined on October 13, 2009, by Christopher Scott

Randolph, M.D.  His impression was "depression and anxiety complaints, no psychosis or

cognitive impairment.  Patient has had somatic limitations.  Current status does not

interfere with managing funds." [R. 319].  Dr. Randolph diagnosed major depression,

recurrent, avoidant [sic] traits, chronic back and neck pain, financial, somatic stressors

and assessed her GAF at 40-45. [R. 320].  As for her psychological evaluations, the ALJ

reported what Dr. Kline said, but did not explain what weight, if any, he was assigning

him. [R. 12].  The ALJ rejected Dr. Randolph's assessment because it was "at variance

with the record." [R. 13].

The ALJ also rejected Dr. Fava's report, because he "[apparently based] his

conclusions on the claimant's assertions," they were "unpersuasively concluded. . . ." [R.

12].  Similarly, the ALJ likewise rejected the opinion of Dr. Bowen:

Stephen Bowen, M.D., qualifies as the claimant's *treating source* physician
(20 CAR 404.1527(d)(2) and 416.927(d)(2)).  Records and reports obtained
from the doctor, dated through February 2010, indicate that the claimant
continues to suffer from chronic low back pain.  Nevertheless, she is being

treated for the same and the doctor reports that she is "doing satisfactory," [sic] including psychiatrically (Exhibits 14F, 16F, 18F).

Dr. Bowen also completed forms prepared by the claimant's attorney wherein he indicated that the claimant is disabled to work and suffers from moderately severe to severe pain (Exhibit 15F). Good intentioned as the doctor may have been, these forms are not consistent with treating records obtained from him and are rightly rejected.

[R. 13].

Instead, the ALJ relied on the opinion of Arthur Brovender, M.D., a medical expert who testified telephonically at the hearing:

I have also considered and given controlling weight to the opinion of medical expert Dr. Brovender, including testimony as to the claimant's severe impairments. In doing so, I point out that his testimony is supported by the weight of the evidence in this case, including the claimant's MRI scan results. In addition, Dr. Brovender is Board Certified in Orthopaedic Surgery. As such, he is a specialist in his field of practice, and we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist, especially when it is supported by the evidence. . . .

[R. 14]. At the hearing, Dr. Brovender testified that based on the medical record, he thought the plaintiff could lift 25 pounds frequently and 50 pounds occasionally. [R. 407]. She could stand six hours and stand and walk six to eight hours in a workday, and could sit six to eight hours with normal breaks. Id. He thought the plaintiff could bend, stoop, squat and kneel occasionally, but not crawl. [R. 408]. He would keep her off unprotected heights. [R. 409]. He testified that the medical record, there is no evidence of muscle atrophy, no reflex changes, no sensory changes, and no weakness in the muscles. [R. 409-10].

Dr. Brovender noted that the May 2007 MRI of the plaintiff's spine showed only mild osteophyte complex at C5-C6, and post-operative changes at C6-C7. [R. 399]. Similarly, Dr. Brovender testified that the December 2009 MRI showed only mild degenerative changes and a minimal posterior disc bulge. [R. 395]. Dr. Brovender testified that "I can't quantify pain and I don't know anybody that can, so I can't say how much pain she has." [R. 411].

The ALJ's reasons for rejecting the testimony and opinion of the plaintiff's treating physician, as well as the opinion of the consultative examiner, are not supported by substantial evidence. The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). Moreover, as Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes
> his own uninformed medical evaluations for those of claimant's treating
> physicians: "Absent a good showing of cause to the contrary, the opinions
> of treating physicians must be accorded substantial or considerable weight
> by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11ᵗʰ Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding
> the legitimacy of the claims that come before him in his private or personal
> capacity; however, as a hearing officer he may not arbitrarily substitute his
> own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11ᵗʰ Cir. 1992)(emphasis in original).  The ALJ, therefore,

"succumbed to the [forbidden] temptation to play doctor and make [his] own independent

medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ failed to properly refute the opinion of the plaintiff's treating

physician, Dr. Bowen, and the consulting examiner, Dr. Fava.  Moreover, in this case the

opinion of Dr. Brovender, the non-examining reviewing physician, does not constitute

substantial evidence on which to determine disability.   At the ALJ hearing, the vocational

expert testified that a person with the plaintiff's limitations as diagnosed by Drs. Bowen

and Fava, including her level of pain, her need to lie down, and her absenteeism, could

not perform any job that exists in the national economy. [R. 378-381].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the

essential evidence and it is clear that the cumulative effect of the evidence establishes

disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11ᵗʰ Cir. 1993).  In

such a case the action should be reversed and remanded with instructions that the plaintiff

be awarded the benefits claimed.  Id.

14

DONE and ORDERED 14 November 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.